**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| VOCALIFE LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:19-CV-00123-JRG |
| | § | |
| AMAZON.COM, INC., AMAZON.COM LLC, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Amazon.com, Inc. and Amazon.com, LLC's (collectively, "Amazon") Motion for Summary Judgment of No Pre-Reissue Damages and Absolute Intervening Rights Pursuant to 35 U.S.C. § 252 (the "Motion"). (Dkt. No. 91.) Having considered the Motion, the subsequent briefing, the oral arguments from the parties at the hearing held on July 15, 2020, and for the reasons set forth herein, the Court is of the opinion that the Motion should be and hereby is **GRANTED**.

**I.     BACKGROUND**

On April 16, 2019, Plaintiff Vocalife LLC ("Vocalife") brought this action regarding Amazon's alleged patent infringement of U.S. Patent No. RE47,049 (the "'049 Patent") which is a reissued patent from U.S. Patent No. 8,861,756 (the "'756 Patent"). (Dkt. No. 1 at ¶¶ 16–17, 31.) The '756 Patent was issued on October 14, 2014 and was reissued on September 18, 2018 as the '049 Patent. (Dkt. No. 96-2; Dkt. No. 96-3.)

Vocalife asserts that Amazon infringes Claims 1–8 and 19–20 of the '049 Patent. (Dkt. No. 102 at 2.) Claims 1 and 20 are the only independent claims asserted—the other asserted claims all depend from Claim 1. (*Id.*) During the prosecution of the reissue application which resulted in the

'049 Patent, Claims 1 and 20 were amended to add the following limitation: "wherein said sound source localization unit, said adaptive beamforming unit, and said noise reduction unit are integrated in a digital processor" (the "DSP Limitation"). (*Id.* at 3.) The DSP Limitation was not present in any claims of the '756 Patent and no claim of the '756 Patent recited a digital signal processor ("DSP"). (*Id.*) Claims 1 and 20 were also amended as follows with the (deletions shown in brackets and additions in italics): "an array of sound sensors positions in [an arbitrary] *a linear, circular, or other* configuration," and "said determination of said delay enables beamforming for [arbitrary numbers of] said *array of* sound sensors [and] *in* a plurality of [arbitrary] configurations," hereinafter, the "Sound Sensor Limitation Amendment." (*Id.* at 3–4.)

Amazon now moves for partial summary judgment seeking to (1) preclude liability based on acts that occurred prior to the issuance of the '049 Patent on September 18, 2018 pursuant to 35 U.S.C. § 252 and (2) preclude liability based on products that were made, purchased, offered for sale, used, or imported prior to the September 18, 2018 reissuance. (Dkt. No. 91.)

## II.    LEGAL STANDARD

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248.

Section 252 of the Patent Act governs intervening rights in the context of a reissue patent. That section states:

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.
>
> A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

35 U.S.C. § 252.

Section 252 describes three distinct damages limitations. Paragraph 1 gives rise to the pre-issuance damages defense and paragraph 2 gives rise to two types of intervening rights. *See NetAirus Techs., LLC v. Apple, Inc.*, No. LA CV10-03257 JAK, 2013 WL 3089061, at *4 (C.D. Cal. May 23, 2013.); *see also Infinity Comp. Prods., Inc. v. Toshiba Am. Bus. Sols., Inc.*, No. 12-6796, 2019 WL 920197, at *7 (E.D. Penn. Feb. 22, 2019). However, as a threshold matter, the damages limitations created by section 252 do not apply if the claims in the original patent and the reissued patents are "identical" because, in that instance, the reissued patent is deemed to be in

effect as of the priority date of the original patent. *Seattle Box Co. v. Indus. Crafting & Packing*, 731 F.2d 818, 827 (Fed. Cir. 1984); *see also Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978 (Fed. Cir. 1986) (Finding that the alleged infringer was not entitled to intervening rights because the reexamination claims were not substantively different than the original claims).

"Identical does not mean verbatim, but means at most without substantive change." *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). There is no absolute rule for determining whether an amended claim is legally identical to an original claim; however, the scope of the claims must be the same after reissue." *Id.* Accordingly, "[a]n amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical for the purposes of § 252." *Id.*

The pre-issuance damages defense created by the first paragraph of section 252 precludes the claims of the reissue patent from reaching back to the date the original patent issued if those claims are not identical with claims in the original patent. *Seattle Box Co.*, 731 F.2d at 827. In other words, "[w]ith respect to new or amended claims, an infringer's liability commences only from the date the reissue patent is issued." *Id.*

The second paragraph of section 252 gives rise to two types of intervening rights: (1) absolute intervening rights, which are "intervening rights that abrogate liability for infringing claims added to or modified from the original patent if the accused products were made or used before the reissue," and (2) equitable intervening rights, which are "intervening rights that apply as a matter of judicial discretion to mitigate liability for infringing such claims even as to products made or used after the reissue if the accused infringer made substantial preparations for the infringing activities prior to reissue." *Marine Polymer Techs., Inc. v. Hemcon, Inc.*, 672 F.3d 1350, 1361–62 (Fed. Cir. 2012). Stated another way, absolute intervening rights extend only to anything

made, purchased, or used before the grant of the reissue patent while equitable rights permit the *continued* manufacture, use, or sale of additional products covered by the reissue patent. *BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1221 (Fed. Cir. 1993).

### III.   DISCUSSION

Amazon filed this Motion asserting that section 252 precludes liability for any acts that occurred prior to the reissuance of the '049 Patent and that absolute intervening rights preclude liability based on Amazon's products made, purchased, offered for sale, used, or imported prior to the reissuance of the '049 Patent because claims asserted in this case are substantively different than the original claims in '756 Patent.  (Dkt. No. 91 at 3.) Vocalife has responded that Amazon is not entitled to relief under section 252 because (1) several of the amendments to the '049 Patent did not substantively change the scope of the claims; (2) absolute intervening rights do not apply to method claims; and (3) Amazon has not carried its burden to identify the products subject to intervening rights. (Dkt. No. 102 at 7, 8, 12.)

#### A.   The Scope of the Claims Have Substantively Changed.

First, as a threshold matter, the Court must determine whether the claims in the '049 Patent are not "identical" to the claims in the '756 Patent such that Amazon may be entitled to relief under section 252. Amazon argues that the addition of the DSP Limitation substantially changed the claims' scope. (Dkt. No. 91 at 6.) Further, Amazon asserts that, while the addition of the DSP Limitation alone renders the claims substantially changed, the Sound Sensor Limitation Amendment both broadened and narrowed limitations causing the reissue claims to be substantially changed from the original claims. (*Id.* at 7–8.)

Vocalife, in its response to the Motion, does not dispute that the addition of the DSP Limitation altered the claim scope of the only independent claims in this case. (Dkt. No. 102 at 7.)

Instead, Vocalife's response challenged whether the changes from the Sound Sensor Limitation Amendment rendered the claims substantially changed. (*Id.* at 7–8.)

However, at the hearing regarding this Motion, the Court asked if the parties "realistically dispute that the claims that came out of the reissue are not substantially identical" to the original claims in view of the fact that the DSP Limitation is contained in both independent claims asserted in this case. (Dkt. No. 204 at 4:14–17.) In response to this question, Vocalife's counsel stated that "[w]e don't dispute that they are substantially different." (*Id.* at 4:25–5:1.) Accordingly, in view of the undisputed facts before the Court (Dkt. No. 102 at 3–4) and the representations made by Vocalife's counsel (Dkt. No. 204 at 4:25–5:1), it is clear that the claims of the '049 Patent are substantively changed from the '756 Patent.

### B. Vocalife is Precluded from Recovering Pre-Reissuance Damages.

Now that the Court has determined that the claims of the '049 Patent are substantively different than the claims of the '756 Patent, it is clear that Vocalife has no rights to enforce prior to the date of reissue. *See Kaufman Co.*, 807 F.2d at 976 ("The first paragraph [of section 252] makes clear that if the claims in the original and reissued patents are 'identical,' the reissued patent is deemed to have effect from the date of the original patent. If not, then the patentee has no rights to enforce before the date of the reissue because the original patent was surrendered and is dead."). Accordingly, the Court finds that Vocalife is precluded from seeking damages for alleged infringement of the '049 Patent prior to September 18, 2018.

### C. Absolute Intervening Rights Apply in this Case.

In addition to seeking preclusion of pre-reissuance damages, Amazon seeks absolute intervening rights for the alleged infringement of the accused products that were made, purchased, offered for sale, used, or imported prior to the reissued patent. In response, Vocalife contends that absolute intervening rights are reserved for products that infringe apparatus claims, not method

6

claims. (Dkt. No. 102 at 8.) Specifically, Vocalife argues that the plain language of section 252 establishes absolute intervening rights for "anything patented" as long as the "specific things" were made, used, offered for sale, sold, or imported before reissue. (*Id.* at 8–9.) Vocalife contends that the "specific things" must be tangible articles and a method or process is not a tangible article. (*Id.* at 9.) Vocalife concludes that section 252's reference to a "specific thing" defines absolute intervening rights in a way that precludes the application of such rights to method claims. (*Id.*)

The issue of whether absolute intervening rights apply to the method claims has not yet been decided by the Federal Circuit and is the subject of a split among specific district courts.[1] While this is an issue of first impression for this Court, the Court finds Judge Bryson's opinion in *Sonos, Inc. v. D&M Holdings, Inc.*[2] instructive on this issue. In *Sonos*, Judge Bryson held that absolute intervening rights could apply to method claims reasoning that "[t]he statutory protection offered by absolute intervening rights does not depend on whether the claims at issue are apparatus or method claims" and that "absolute intervening rights extend only to those 'specific' things in existence before the reissuance or reexamination . . . ." *Sonos, Inc.*, 287 F. Supp. 3d at 539. Judge Bryson focused on the nature of the product or activity in question to determine whether absolute intervening rights should apply concluding that the proper focus should not be limited to whether the claim was an apparatus or method claim. *Id.* at 540.

The focus was not on whether the claim was an apparatus or method claim.

Additionally, the Court finds *Infinity Comp. Prods., Inc. v. Toshiba Am. Bus. Sols., Inc.*[3] persuasive. The *Infinity* court agreed with the *Sonos* analysis and found additional support from

---

[1] While the hope of section 252's enactment was to "bring to a conclusion most of the previous wandering and the uncertain status of the law relating to [this] [] subject," it is clear section 252 has not lived up to such high hopes. *See* Federico, *Intervening Rights in Patent Reissues*, 30 Geo. Wash. L. Rev. 603, 637 (1961–62).

[2] 287 F. Supp. 3d 533 (D. Del. 2017)

[3] No. 12-6796, 2019 WL 920197 (E.D. Penn. Feb. 22, 2019)

the Federal Circuit. *Infinity Comp. Prods., Inc.*, 2019 WL 920197 at *10. The *Infinity* court relied on the Federal Circuit's interchangeable use of the words "product" and "accused product" with section 252's use of the words "specific things made." *Id.* (citing *BIC Leisure Prods., Inc.*, 1 F.3d at 1221–22 ("The first sentence defines 'absolute' intervening rights. This sentence provides an accused infringer with the absolute right to use or sell a *product* that was made, used, or purchased before the grant of the reissue patent as long as this activity does not infringe a claim of the reissue patent that was in the original patent. . . In other words, it covers *products* already made at the time of reissue.") (emphasis added)). This Court, as did the *Infinity* court, finds that this interchangeable word usage supports the conclusion that products that infringe a method claim can be a "specific thing" within the meaning of section 252. *See id.*

Finally, the Court finds instructive the plain language of section 252. The grant of absolute intervening rights under section 252 is for acts which occurred *prior* to the reissuance of the asserted patent. 35 U.S.C. § 252. Conversely, the grant of equitable intervening rights is for acts which are *continuing* after the reissuance of the asserted patent. *Id.*; *see also* Federico, *Intervening Rights in Patent Reissues*, 30 Geo. Wash. L. Rev. 603, 632 (1961–62) ("The second phase of protection provided by the statute relates to the ability of the defendant to continue acts beyond the use or sale of the specific thing in existence before the date of the reissue . . . ."). Congress' inclusion of "processes" in its grant of equitable intervening rights does not preclude a "specific thing" which practices a claimed method from being protected by absolute intervening rights so long as the "specific thing" was in existence prior to the asserted patents reissuance. To deny protection to such specific things would defeat the purpose of the statute to protect acts prior to the reissuance. *Sonos, Inc.*, 287 F. Supp. 3d at 539–40 ("For example, if particular goods were made by a process that is separately covered by a process claim that was also changed upon

8

reissuance or reexamination, absolute intervening rights would be of no benefit to the accused infringer if the patentee could simply assert a parallel process claim against the process that was used to make the very same products that were intended to be protected by absolute intervening rights."). Accordingly, the Court concludes that absolute intervening rights are not so limited as Vocalife contends, and as such, absolute intervening rights for the alleged infringement of method claims may apply to the accused products manufactured prior to September 18, 2018.

### D.   Amazon has Carried its Burden to Identify the Products Subject to Intervening Rights.

Finally, Vocalife argues that even if absolute intervening rights apply to method claims, Amazon has failed to identify the "specific things" that would be protected by such rights. (Dkt. No. 102 at 12.) Specifically, Vocalife contends that Amazon has failed to name a single hardware product, software release, or combination of hardware and software that define the scope of the judgment it seeks under section 252. (*Id.* at 13.) Accordingly, Vocalife contends that a question of fact remains regarding which products are subject to absolute intervening rights.

The Court does not find that such raises a fact question, because it is clear that the identification of a date alone allows the parties to determine which products are subject to intervening rights. First, Vocalife has demonstrated that it is able to identify which products are subject to intervening rights as its damages expert has calculated damages separately for products produced before September 18, 2018 and products produced after that date. (Dkt. No. 106-2 at PageID #: 5091.) Second, Vocalife concedes that its position is that the accused products infringe at the point of their manufacture. (Dkt. No. 204 at 26:17–20 ("To be clear, we are -- we are alleging that from the time they built the Echo that had direction microphones, it used the method of our patent and infringed.").) As such, tangible, "specific things" which are accused of infringement

can be identified by their manufacture date, and such precludes the existence of a material question of fact as raised by Vocalife.

## IV. CONCLUSION

For the aforementioned reasons, the Motion is **GRANTED**. Accordingly, it is **ORDERED** that Vocalife is precluded from seeking damages for alleged infringement of the '049 Patent prior to September 18, 2018 and absolute intervening rights apply to those accused products made, used, sold, offered for sale, or imported before September 18, 2018.

**So ORDERED and SIGNED this 14th day of August, 2020.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE