```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF TEXAS

 3                       MARSHALL DIVISION

 4   VOCALIFE LLC,                 )(

 5        PLAINTIFF,               )(    CIVIL ACTION NO.

 6                                 )(    2:19-CV-123-JRG

 7   VS.                           )(    MARSHALL, TEXAS

 8                                 )(

 9   AMAZON.COM, INC. and          )(

10   AMAZON.COM LLC,               )(    OCTOBER 7, 2020

11        DEFENDANTS.              )(    1:11 P.M.

12                    TRANSCRIPT OF JURY TRIAL

13                      AFTERNOON SESSION

14         BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

15             UNITED STATES CHIEF DISTRICT JUDGE

16

17   FOR THE PLAINTIFF:

18   MR. ALFRED R. FABRICANT
     MR. PETER LAMBRIANAKOS
19   MR. VINCENT J. RUBINO, III
     MS. AMY PARK
20   MR. ENRIQUE ITURRALDE
     FABRICANT LLP
21   230 Park Avenue, 3rd Floor W.
     New York, NY 10169
22
     MR. SAMUEL F. BAXTER
23   MS. JENNIFER L. TRUELOVE
     MCKOOL SMITH, P.C.
24   104 East Houston Street, Suite 300
     Marshall, TX 75670
25
```

```
 1    FOR THE DEFENDANTS:

 2    MR. JOSEPH R. RE
      ALAN G. LAQUER
 3    KENDALL M. LOEBBAKA
      JOSHUA J. STOWELL
 4    KNOBBE, MARTENS, OLSON & BEAR, LLP
      2040 Main Street, Fourteenth Floor
 5    Irvine, CA 92614

 6    MR. COLIN B. HEIDEMAN
      KNOBBE, MARTENS, OLSON & BEAR, LLP
 7    925 Fourth Avenue, Suite 2500
      Seattle, WA 98104
 8
      MS. JENNIFER H. DOAN
 9    MR. JOSHUA R. THANE
      MR. KYLE R. AKIN
10    HALTOM & DOAN
      6500 Summerhill Road, Suite 100
11    Texarkana, TX 75503

12    MR. J. DAVID HADDEN
      MR. RAVI RANGANATH
13    MR. THOMAS JOHN FOX
      FENWICK & WEST LLP
14    801 California Street
      Mountain View, CA 94041
15
      MR. DERON R. DACUS
16    THE DACUS FIRM, PC
      821 ESE Loop 323, Suite 430
17    Tyler, TX 75701

18

19    COURT REPORTER:      Shelly Holmes, CSR, TCRR
                           Official Reporter
20                         United States District Court
                           Eastern District of Texas
21                         Marshall Division
                           100 E. Houston Street
22                         Marshall, Texas  75670
                           (903) 923-7464
23

24    (Proceedings recorded by mechanical stenography, transcript
      produced on a CAT system.)
25
```

```
11:53:17    1                    P R O C E E D I N G S
11:53:17    2           (Jury out.)
11:53:18    3           COURT SECURITY OFFICER:  All rise.
01:11:14    4           THE COURT:  Be seated, please.
01:11:16    5           All right.  Counsel, we will now move to take up
01:11:35    6   and consider any motions either party wishes or cares to
01:11:39    7   offer pursuant to Rule 50(a) of the Federal Rules of Civil
01:11:45    8   Procedure.
01:11:45    9           Let me ask the parties, first, to identify
01:11:51   10   topically the matters on which they wish to move for relief
01:11:57   11   under Rule 50(a).  I merely want to identify the areas in
01:12:02   12   which you're seeking relief.  Then we will determine how
01:12:06   13   best to take up any related arguments.
01:12:08   14           Let me begin with Plaintiff.  Does Plaintiff care
01:12:11   15   to offer any motions for relief under Rule 50(a)?
01:12:17   16           MR. LAMBRIANAKOS:  Yes, Your Honor.
01:12:18   17           THE COURT:  If you'll go to the podium, please,
01:12:20   18   and identify the areas where you're seeking relief.
01:12:23   19           MR. LAMBRIANAKOS:  Your Honor, Plaintiff has two
01:12:25   20   areas where it's seeking relief and will present oral
01:12:29   21   argument here today.
01:12:30   22           The first is no invalidity of the '049 patent for
01:12:34   23   lack of enablement and written description.
01:12:36   24           And the second is no invalidity for
01:12:44   25   inoperativeness or failure to disclose what they regard as
```

1244

| | | |
|---|---|---|
| 01:12:48 | 1 | their invention with respect to the '623 application which |
| 01:12:55 | 2 | is the second reissue application. |
| 01:13:15 | 3 | THE COURT:  All right.  What other areas do you |
| 01:13:18 | 4 | seek relief under Rule 50(a)? |
| 01:13:21 | 5 | MR. LAMBRIANAKOS:  There are no other areas, |
| 01:13:23 | 6 | Your Honor. |
| 01:13:23 | 7 | THE COURT:  All right.  Let me then ask |
| 01:13:24 | 8 | Defendants, what matters do you wish to seek relief on |
| 01:13:28 | 9 | under Rule 50(a)? |
| 01:13:30 | 10 | MR. RE:  Thank you, Your Honor.  Joseph Re for |
| 01:13:33 | 11 | Amazon Defendants. |
| 01:13:34 | 12 | We have quite a few areas. |
| 01:13:36 | 13 | Number one is no induced infringement on both |
| 01:13:44 | 14 | grounds of no evidence of intent to infringe or cause the |
| 01:13:48 | 15 | infringement by another, as well as no direct infringement |
| 01:13:53 | 16 | by the user of the Echo device. |
| 01:13:57 | 17 | Next would be no direct infringement by the Amazon |
| 01:14:01 | 18 | Defendants. |
| 01:14:03 | 19 | Next is no contributory infringement by the Amazon |
| 01:14:07 | 20 | Defendants. |
| 01:14:08 | 21 | Next, no Doctrine of Equivalents. |
| 01:14:16 | 22 | Next, no willfulness. |
| 01:14:19 | 23 | And then, lastly, a detailed argument on no |
| 01:14:24 | 24 | damages or no evidence to support a proper reasonable |
| 01:14:29 | 25 | royalty, either lump sum or running. |

01:14:31  1       THE COURT:  All right.  Are there any other areas

01:14:33  2  where Defendants are seeking relief under Rule 50(a)?

01:14:37  3       MR. RE:  No, Your Honor.  That covers it.

01:14:39  4       THE COURT:  Okay.

01:14:40  5       MR. RE:  And we did file a brief last night at

01:14:44  6  11:59 on the various topics.  Thank you.

01:14:46  7       THE COURT:  I have it, and I have looked through

01:14:48  8  it.

01:14:49  9       And having done that, I would suggest there's no

01:14:54  10  need to go through the same issues in the same degree of

01:14:59  11  detail in oral argument today than have been put forward in

01:15:03  12  write -- in writing.

01:15:04  13       All right.  Well, given that these are the areas

01:15:12  14  where the parties are seeking relief under Rule 50(a), they

01:15:17  15  don't, as is often the case, directly intersect in

01:15:22  16  opposition with each other.

01:15:24  17       The Defendants have not sought a judgment as a

01:15:27  18  matter of law that the asserted claims are invalid.

01:15:31  19       The Plaintiffs have sought that there is no

01:15:33  20  invalidity.  So those do not intersect.

01:15:39  21       And then the other matters raised by the

01:15:44  22  Defendants do not intersect with the relief under

01:15:48  23  Rule 50(a) sought by the Plaintiff.  So we will simply have

01:15:51  24  to take these up individually, one at a time.

01:15:53  25       Let me ask this question.  I think I know the

01:15:59   1   answer, but just to be certain, do Defendants agree with

01:16:03   2   any of the grounds asserted by Plaintiff?  And does

01:16:06   3   Plaintiff agree with any of the grounds asserted by

01:16:10   4   Defendant?

01:16:10   5          MR. RE:  The Defendant does not agree.

01:16:13   6          MR. LAMBRIANAKOS:  Your Honor, there is one ground

01:16:18   7   with which the Plaintiff agrees, and that is on the matter

01:16:21   8   of the no infringement under the Doctrine of Equivalents,

01:16:24   9   which is Heading No. VI on Page 11 of their brief.

01:16:30  10          Vocalife has not alleged infringement under the

01:16:32  11   Doctrine of Equivalents with respect to the DSP limitation.

01:16:36  12          THE COURT:  All right.  Then I think the Court can

01:16:51  13   agree with the parties that there is no infringement under

01:16:54  14   the Doctrine of Equivalents, and I'll grant Defendants'

01:16:57  15   motion for judgment as a matter of law as to that discrete

01:17:01  16   grounds, based on a lack of opposition from the Plaintiff.

01:17:04  17          And quite honestly, counsel, that's why I asked,

01:17:08  18   because when I saw the Defendants' brief, I had no

01:17:11  19   recollection of any evidence regarding Doctrine of

01:17:14  20   Equivalents in the trial.  That clarifies that issue.

01:17:15  21          All right.  Let's then begin with Plaintiff's

01:17:21  22   motion for judgment as a matter of law under Rule 50(a)

01:17:23  23   regarding no invalidity.

01:17:25  24          Let me hear brief and targeted argument from

01:17:29  25   Plaintiff first.

01:17:29   1            MR. AKIN:  Your Honor, before that, we used one

01:17:32   2   additional exhibit this morning --

01:17:34   3            THE COURT:  I'll get to that, Mr. Akin.

01:17:36   4            MR. AKIN:  Okay.

01:17:38   5            THE COURT:  Go ahead, counsel.

01:17:41   6            MR. OSTLING:  Your Honor, Jacob Ostling for the

01:17:44   7   Plaintiff.  If I may proceed.

01:17:46   8            THE COURT:  You may proceed.

01:17:48   9            MR. OSTLING:  Vocalife moves for judgment as a

01:17:51   10  matter of law that the '049 patent, and specifically

01:17:54   11  Claims 1 and 8 of the '049 patent, are not invalid for lack

01:17:58   12  of written description or enablement.

01:18:00   13           Amazon simply presented no evidence on these

01:18:04   14  issues.  And, in particular, Dr. Stern presented no

01:18:09   15  evidence on these issues.

01:18:11   16           And, with that, I will yield the podium to the

01:18:20   17  Defendant, unless Your Honor has any questions.

01:18:23   18           THE COURT:  Is it your position that Defendants

01:18:30   19  came forward with any evidence on written description as a

01:18:33   20  means of invalidity?

01:18:35   21           MR. OSTLING:  Your Honor, it's our position that

01:18:46   22  Dr. Stern never put forward any opinions on whether the

01:18:54   23  specification enabled each of the claims.

01:19:01   24           THE COURT:  Well, you've sought relief under

01:19:04   25  Rule 50(a) seeking a finding as a matter of law of no

1248

01:19:08  1   invalidity as to the asserted invalidity under a lack of

01:19:15  2   enablement or a lack of a written description.  And I'm

01:19:18  3   trying to determine do you believe the Defendants came

01:19:21  4   forward with any evidence on either of these, or are you

01:19:25  5   telling me that it's your position that the Defendants

01:19:27  6   failed to come forward with any evidence on enablement

01:19:30  7   only?

01:19:31  8          MR. OSTLING:  Both, Your Honor.

01:19:32  9          THE COURT:  Okay.  All right.  Let me hear a

01:19:35  10  response from Defendants as to the issues surrounding

01:19:40  11  enablement and written description.

01:19:46  12          MR. RE:  Joseph Re for the Amazon Defendants.

01:19:49  13          I think there's a little failure to communicate

01:19:53  14  here.  The jury instructions made clear that our argument

01:19:56  15  is not under 112, lack of enablement, written description,

01:20:04  16  which is up, I believe.  We are not contesting validity

01:20:07  17  under 112 enablement.

01:20:09  18          It's actually 101 utility.  Utility is not in the

01:20:13  19  112 statute.  It's obviously in 101.  And the lack of

01:20:17  20  utility, of course, was the evidence put forth by the

01:20:18  21  inventors to the Patent Office that the invention does not

01:20:20  22  work, and, in fact, it's wrong and should be recited in a

01:20:24  23  different way.  That's the evidence on lack of utility

01:20:31  24  under 101, not 112.

01:20:31  25          THE COURT:  I understand, Mr. Re.  But just like

1249

01:20:34  1   DOE, I'm not aware of any evidence that came forward in the

01:20:37  2   trial that was targeted by Defendants directly to a lack of

01:20:41  3   enablement or a lack of an adequate written description.

01:20:42  4        Preserving your arguments on inoperability, do you

01:20:48  5   contest that you put forward evidence that would support a

01:20:51  6   finding of invalidity based on a lack of enablement or a

01:20:55  7   lack of written description?

01:20:56  8        MR. RE:  We did not.  That was not a theory of the

01:20:58  9   case.

01:20:59  10       THE COURT:  Okay.  Then I will find that there is

01:21:01  11  no invalidity as to the '049 patent on the grounds of a

01:21:06  12  lack of enablement or a lack of a written description.  To

01:21:10  13  that extent, it's granted.  But it's granted much like the

01:21:14  14  Plaintiff's DOE JMOL in that I think everyone agrees there

01:21:20  15  was no evidence.

01:21:21  16       So that leaves us the remaining motion for

01:21:25  17  judgment as a matter of law by Plaintiffs finding that --

01:21:30  18  or seeking a finding of the Court that there is no

01:21:32  19  invalidity of the asserted patent based on inoperability.

01:21:37  20       Let me hear from Plaintiff on that.  And this one

01:21:43  21  we clearly have joined issue on.

01:21:45  22       MR. LAMBRIANAKOS:  Thank you, Your Honor.

01:21:46  23       Defendants' claim is based entirely on the second

01:21:54  24  reissue declaration which has the preamble which states

01:21:58  25  that the inventors regarded the claims as wholly or partly

1250

01:22:04  1  inoperative or invalid, based on the reasons set forth.

01:22:08  2      There is no evidence of inoperability set forth.

01:22:14  3  Inoperativeness is not a basis for invalidity as a matter

01:22:18  4  of law.  There's no such thing as invalidity for

01:22:23  5  inoperativeness.  In fact, the Federal Circuit has said

01:22:24  6  that inoperativeness goes to whether the claims are

01:22:27  7  sufficient to cover the entire scope of -- of the invention

01:22:30  8  and not whether the claims are inoperable.

01:22:33  9      There's been no evidence presented of

01:22:35  10  inoperability or that the claims simply do not work.  No

01:22:40  11  expert has addressed that issue and said that a particular

01:22:44  12  clause that is addressed in the second reissue application

01:22:47  13  is inoperable and does not work, nor did any of the

01:22:50  14  inventors state that that claim limitation is inoperable.

01:22:55  15      Secondly, a statement of error -- and that is that

01:22:58  16  the claim was erroneous -- could not be sufficient to draw

01:23:03  17  the conclusion by a jury that the claim itself is not the

01:23:07  18  invention that -- is not what the inventors regarded as

01:23:12  19  their invention.

01:23:14  20      It was a statement, I think, is clear from the --

01:23:17  21  from the declaration, that the claim was recited

01:23:20  22  incorrectly, but at no point did the inventors state that,

01:23:24  23  this is not my invention, nor should -- could the jury draw

01:23:28  24  the reasonable inference from those statements that the

01:23:31  25  inventors did not regard what had been issued in a prior

01:23:35  1  patent, which is the '049 patent, was their invention.

01:23:39  2      So we don't believe there's sufficient evidence to

01:23:41  3  go to the jury on those two theories of invalidity,

01:23:45  4  Your Honor.

01:23:45  5      THE COURT:  All right.  What's Defendants'

01:23:47  6  response?  Succinctly, please.

01:23:56  7      MR. RE:  This was the subject of our summary

01:23:58  8  judgment motion.  The Court heard extensive argument about

01:24:01  9  the representations by both inventors to the Patent Office.

01:24:03  10  And we believe that evidence is sufficient to take to the

01:24:06  11  jury the lack of utility and the -- the particular

01:24:11  12  provision of 112, Paragraph 2, where the inventor must

01:24:19  13  claim -- claim what they regard as their invention.

01:24:21  14      And I think the evidence showed on the

01:24:24  15  representations to the Patent Office that there was an

01:24:26  16  obvious error in the claim, warranting a second reissue.

01:24:30  17  And the explanation showed that the inventors did not

01:24:33  18  believe it was correctly claimed to reflect what they

01:24:36  19  thought was truly their invention.

01:24:38  20      THE COURT:  All right.  Thank you, counsel.

01:24:40  21      With regard to Plaintiff's motion for judgment as

01:24:45  22  a matter of law under Federal Rule of Civil Procedure 50(a)

01:24:48  23  related to an assertion of no invalidity with regard to the

01:24:54  24  disputed issue of inoperability, that motion by the

01:25:00  25  Plaintiff is denied.

1252

01:25:01  1      Let's turn now to the remaining motions for

01:25:05  2  judgment as a matter of law asserted by Defendants.

01:25:06  3      Defendants have sought relief under Rule 50(a)

01:25:12  4  with regard to a finding of no induced infringement and no

01:25:17  5  direct infringement.

01:25:19  6      Is there any reason these should be argued

01:25:22  7  separately?

01:25:23  8      MR. RE:  Yes, I would prefer that.

01:25:26  9      THE COURT:  All right.  Then let me hear your

01:25:28  10 argument on no induced infringement.

01:25:29  11     MR. RE:  The induced infringement argument is --

01:25:39  12 is separate and apart from direct infringement because of

01:25:43  13 the requirement for intent.  An intent, there must be a

01:25:49  14 subjective belief that you are, in fact, infringing.

01:25:53  15     There was no evidence presented at this trial that

01:25:56  16 my client ever believed that they were infringing.  And, in

01:26:00  17 fact, this Court has already granted our summary judgment

01:26:03  18 motion that there was no inducement prior to the filing of

01:26:07  19 the complaint.

01:26:08  20     You would have thought that the Plaintiff would

01:26:12  21 have focused on the time period that was relevant in this

01:26:15  22 case.  They did not.  They focused on events that occurred

01:26:18  23 years and years before the issuance of the only

01:26:22  24 patent-in-suit.

01:26:23  25     I believe they obfuscated what the issues were,

01:26:26  1  what the legal rights that were being asserted.  And the

01:26:29  2  only evidence of intent -- probative evidence of intent was

01:26:34  3  delivered by Mr. Hilmes who explained his immediate

01:26:37  4  reaction when he saw the patent.

01:26:40  5       And his reaction was in the spring of 2019, right

01:26:43  6  after the suit was filed.  And from that day forward to

01:26:48  7  today, Amazon has always -- always believed that they are

01:26:50  8  not infringing that patent.

01:26:53  9       And inducement requires intent after actual notice

01:26:59  10 of the patent.

01:26:59  11      The willful blindness theory would only relate now

01:27:04  12 to whether or not we acted in a manner where we disregarded

01:27:08  13 potential infringement.  There was no evidence on that.

01:27:10  14 Willful blindness doesn't apply anymore.  That we're only

01:27:13  15 focusing on the period of time when Amazon had actual

01:27:16  16 knowledge of the patent.

01:27:17  17      And the record is simply devoid -- and the

01:27:22  18 Plaintiff's only effort at trying to show inducement was a

01:27:26  19 statement by Ms. Alex -- Mr. McAlexander that we encourage

01:27:30  20 our customers to use the device.

01:27:31  21      That is obviously short, as a matter of law,

01:27:37  22 under -- under any basis to allege, or let alone prove,

01:27:43  23 induced infringement.

01:27:44  24      Also, induced infringement requires that the

01:27:47  25 customer directly infringe.  And as this Court knows, we've

1254

01:27:50    1  set forth, I believe, eight separate grounds that the

01:27:53    2  customer could not directly infringe.

01:27:54    3        And, on that basis, there cannot be induced

01:27:57    4  infringement because induced infringement requires that

01:28:00    5  Amazon induce another to directly infringe.  And we

01:28:03    6  incorporate in our brief those grounds that are in

01:28:06    7  detail -- eight grounds why the claims are not satisfied by

01:28:10    8  the customer.

01:28:11    9        THE COURT:  All right.  Let me hear Plaintiff's

01:28:13   10  response.

01:28:14   11        MR. RUBINO:  Your Honor, Vincent Rubino for the

01:28:25   12  Plaintiff.  May I proceed?

01:28:27   13        THE COURT:  You may proceed.

01:28:28   14        MR. RUBINO:  So, first, with regard to the intent

01:28:30   15  issue, Plaintiff has presented evidence of at least

01:28:35   16  Amazon's intent to instruct its customers to use the

01:28:38   17  products in the ways set forth in the claim.  They know how

01:28:41   18  the products work.  They know how each of the limitations

01:28:44   19  is carried out.  And they instruct their customers to use

01:28:46   20  the products in the way that infringes.

01:28:51   21        Vocalife set forth extensive evidence on that

01:28:53   22  topic as to how the products work, in Mr. McAlexander's

01:28:56   23  presentation.

01:28:57   24        Additionally, with regard to the issue of willful

01:28:59   25  blindness, there was extensive evidence presented from

01:29:03  1  every -- almost every Amazon witness that they were

01:29:06  2  instructed to close their eyes to patents and not to

01:29:09  3  analyze patents.

01:29:11  4       And to the extent that Amazon is now relying on

01:29:13  5  Mr. Hilmes' testimony, that is an issue of credibility for

01:29:18  6  the jury.  There were numerous items on which Mr. Hilmes

01:29:21  7  was cross-examined and which his credibility was called

01:29:24  8  into question, and, therefore, that issue should also go to

01:29:29  9  the jury.

01:29:29  10       And then with regard to the specific prongs of the

01:29:32  11  direct infringement by the customers, to the extent that

01:29:33  12  was also balled up into that argument, there was extensive

01:29:36  13  evidence presented for each of those subcategories by

01:29:40  14  Mr. McAlexander.

01:29:41  15       THE COURT:  All right.  Thank you, counsel.

01:29:42  16       With regard to Defendants' motion for judgment as

01:29:50  17  a matter of law of no indirect infringement, that motion is

01:29:52  18  denied.

01:29:53  19       Let me hear next Defendants' motion for no direct

01:29:57  20  infringement.

01:29:58  21       MR. RE:  Thank you, Your Honor.

01:30:03  22       This one is a lot easier because the allegation of

01:30:06  23  direct infringement by Amazon was not presented at this

01:30:10  24  trial.  We had some briefing on it.  It was clear that

01:30:14  25  their theory before the trial began was that Amazon tested

01:30:18    1    the products at the factory.

01:30:21    2         There was no evidence -- the word "testing," I

01:30:25    3    don't think, even appears in the transcript, and they

01:30:27    4    didn't seek any remedy on direct infringement.  So I am

01:30:30    5    assuming that they have dropped direct infringement by

01:30:33    6    Amazon.

01:30:33    7         THE COURT:  Let me hear from Plaintiff.

01:30:37    8         MR. RUBINO:  Your Honor, with regard to direct

01:30:48    9    infringement, there was evidence presented at this trial

01:30:51   10    that Amazon did test its products extensively, as a matter

01:30:56   11    of fact, particularly with regard to the publication that

01:30:59   12    was -- that the witnesses were questioned on where they

01:31:02   13    explained how they at least tested every aspect -- aspects

01:31:06   14    even like the adaptive beamformer algorithm that Mr. Hilmes

01:31:11   15    admitted was the true adaptive beamformer algorithm.  That

01:31:14   16    was all tested by Amazon.

01:31:16   17         I don't think there was a theory of at the factory

01:31:19   18    that was presented or that was really what the focus of

01:31:21   19    anything was before trial.  However, there was evidence

01:31:23   20    presented at trial of Amazon testing its products,

01:31:27   21    collecting data for its products, releasing new products,

01:31:30   22    continuously updating its products with its customers, and

01:31:35   23    also evidence showing that Amazon displays its products and

01:31:37   24    uses its products.

01:31:38   25         And for that reason -- for at least those reasons,

01:31:41   1   Vocalife would submit that direct infringement should

01:31:43   2   remain in the case.

01:31:45   3           THE COURT:  All right.  Well, with regard to

01:31:49   4   Defendants' motion for judgment as a matter of law under

01:31:52   5   Rule 50(a) that there is no direct infringement by Amazon

01:31:58   6   alone, I will grant that motion.

01:32:00   7           I do find that there is an issue of direct

01:32:04   8   infringement, inasmuch as it's part of the inducement

01:32:10   9   relating to the customers of Amazon.

01:32:12  10           All right.  I'll next take up the grounds urged by

01:32:18  11   Defendants with regard to no contributory infringement.

01:32:20  12           Let me hear from Defendants on this.

01:32:22  13           MR. RE:  I -- I think this might just be

01:32:28  14   housekeeping.

01:32:29  15           It's not in the pre-trial order.  We did not

01:32:31  16   litigate contributory infringement at all in this trial.

01:32:34  17           As the Court knows, 271(c) is very complicated,

01:32:38  18   compared to 271(b).  There was no discussion at all about

01:32:43  19   whether or not certain articles were staple articles of

01:32:46  20   commerce to be used in combination.

01:32:47  21           So there has been no case or no litigation that I

01:32:51  22   heard in this entire trial pertaining to contrib.  And they

01:32:51  23   didn't allege contrib, but it popped up in a footnote on a

01:32:57  24   summary judgment when we sought judgment on no indirect.

01:32:58  25           So I am assuming, and I think it's a safe

01:33:03 1  assumption, that contributory infringement was not advanced

01:33:08 2  by the Plaintiff.  And it's not in the pre-trial order.

01:33:12 3          THE COURT:  Let me hear from the Plaintiff.

01:33:13 4          MR. LAMBRIANAKOS:  Contributory infringement was

01:33:19 5  one of the theories that Mr. McAlexander set forth in his

01:33:23 6  report.

01:33:23 7          It's true that it didn't make it into the jury

01:33:26 8  instructions that was -- excuse me, to the pre-trial order.

01:33:28 9  That was an oversight on our part.  The pre-trial order did

01:33:32 10 mention indirect infringement generally.

01:33:35 11         Mr. McAlexander testified that he was providing an

01:33:40 12 opinion on contributory.  And he testified, as well, that

01:33:42 13 there were no substantial non-infringing uses for the

01:33:43 14 accused products.

01:33:44 15         And so, with that, while it did not appear in the

01:33:46 16 pre-trial order, we didn't view that, we don't view that as

01:33:50 17 a withdrawal of a claim or otherwise as a waiver of the

01:33:52 18 claim.  So we request it stay in the case.

01:33:55 19         THE COURT:  Do you believe there's adequate

01:33:57 20 evidence that's been presented during the trial for the

01:34:00 21 issue of contributory infringement to go to the jury?

01:34:03 22         MR. LAMBRIANAKOS:  We do, Your Honor.

01:34:04 23         THE COURT:  All right.  Well, with regard to the

01:34:06 24 Defendants' motion for judgment as a matter of law of no

01:34:11 25 invalidity based on contributory infringement, the Court

1259

01:34:14  1   agrees with the Defendants, and the Court grants their

01:34:17  2   motion.

01:34:17  3         I find no evidence of contributory infringement

01:34:21  4   presented during the course of the trial before the jury

01:34:26  5   that would support an issue being presented as a part of

01:34:29  6   the verdict.

01:34:30  7         The issue of the Doctrine of Equivalents has

01:34:32  8   previously been dealt with.  The Court grants that, based

01:34:35  9   on the agreement of the Plaintiff that they did not seek

01:34:36  10  relief under the Doctrine of Equivalents.

01:34:37  11        That brings us next to Defendants' motion for

01:34:41  12  judgment as a matter of law of no willful infringement.

01:34:43  13        Let me hear from Defendants.

01:34:46  14        MR. RE:  Thank you, Your Honor.

01:34:49  15        With regard to willfulness, it is now agreed,

01:34:55  16  based on the Court's prior rulings and the evidence, that

01:34:58  17  there was no knowledge of this patent until the filing of

01:35:01  18  the complaint.  Therefore, any egregious behavior must have

01:35:09  19  some relationship to the acts that give rise to liability.

01:35:12  20        The Plaintiff has presented no evidence of any

01:35:16  21  behavior done by Amazon which could conceivably be

01:35:20  22  considered to be willful.

01:35:21  23        And, in fact, much of this trial was spent on acts

01:35:25  24  that occurred years before any potential liability.  And so

01:35:29  25  for there to be willfulness, there has to be acts after

01:35:34  1   liability is accrued.  And liability can only accrue from

01:35:38  2   the date of the complaint on, because this case is an

01:35:41  3   induced infringement case.

01:35:43  4        And this Court's already ruled that the inducement

01:35:45  5   is complaint going forward.

01:35:48  6        So you would have thought that the Plaintiff would

01:35:50  7   have presented some evidence about our behavior recently,

01:35:55  8   something we had done after Mr. Hilmes had read the patent.

01:35:59  9        But there was not even a single question about

01:36:01  10  what Amazon does today and Amazon's activities with regard

01:36:06  11  to this patent after Amazon knew of the patent.

01:36:10  12       And for the reasons we set forth in the brief, it

01:36:13  13  is -- I think I used the word "metaphysically impossible"

01:36:17  14  for there to be, under these circumstances, acts of

01:36:20  15  willfulness that are post-complaint when not a single

01:36:26  16  question was directed to willfulness post-complaint.

01:36:30  17       Everything was focused on 2011.  The emails -- we

01:36:32  18  spent so much time talking about 2013, 2014, and I really

01:36:36  19  believe what happened here is they like the '756 on some

01:36:39  20  issues, and they don't like it on other issues, when the

01:36:42  21  '756 patent -- everyone agrees and it can be stipulated --

01:36:47  22  was and always has been an invalid patent.

01:36:48  23       So the rights that are at issue are

01:36:52  24  post-complaint, post-complaint only, and I haven't heard a

01:36:55  25  single sentence or question that pertains to willfulness

01:36:59  1  post-complaint.

01:37:00  2          THE COURT:  Let me hear from the Plaintiff,

01:37:05  3  please.

01:37:05  4          MR. RUBINO:  Your Honor, I'd just like to address

01:37:12  5  that one last comment about the '756 patent always having

01:37:15  6  been invalid.  That -- that flies in the face of everything

01:37:18  7  their damages expert said about comparing that patent as a

01:37:23  8  valid patent for purposes of a damage calculation.

01:37:26  9          That statement aside, with regard to willfulness

01:37:30  10 specifically, we've set forth -- Vocalife has set forth

01:37:32  11 numerous pieces of evidence from every -- nearly every

01:37:34  12 single Amazon witness about their policy of willful

01:37:39  13 blindness patents.

01:37:40  14         Before the case, even after the case, Mr. Hilmes

01:37:40  15 was questioned on the stand about whether he agrees with

01:37:42  16 the policy of his superior, Mr. Pance.  And he said he

01:37:46  17 agrees with his -- with his superior.  He didn't say that

01:37:49  18 he was no longer remaining willfully blind to patents, that

01:37:53  19 their conduct had changed.

01:37:55  20         And so for that reason, those issues are -- are

01:37:57  21 very much alive and continuous, even through today

01:38:01  22 potentially, and that evidence is in the record.

01:38:02  23         THE COURT:  All right.  With regard to Defendants'

01:38:05  24 motion for judgment as a matter of law related to no

01:38:10  25 willful infringement, the Court denies that motion.

01:38:13   1          And the last motion for judgment as a matter of

01:38:16   2   law under Rule 50(a) to be addressed is the Defendants'

01:38:21   3   motion that there's been no adequate proof of damages in

01:38:24   4   the case.

01:38:24   5          Let me hear from Defendants on this.

01:38:27   6          MS. DOAN:  Your Honor, Jennifer Doan for Amazon.

01:38:30   7          I've actually broken that up into a couple of

01:38:33   8   different parts.  The first is there's no reason -- basis

01:38:36   9   for a reasonable royalty with respect to the DEV.

01:38:40   10         The second is -- sorry, Your Honor, the

01:38:43   11  apportionment and --

01:38:43   12         THE COURT:  Give me both arguments at the same

01:38:49   13  time.

01:38:49   14         MS. DOAN:  Yes, Your Honor.

01:38:49   15         All right.  So, with respect to the first

01:38:50   16  argument, there's no basis for a reasonable royalty,

01:38:50   17  Mr. Ratliff testified that the DEV was $1.32 to $1.35 per

01:38:56   18  device.

01:38:56   19         He also admitted the there's no basis to conclude

01:38:59   20  the DEV is a reliable basis on which to determine

01:39:01   21  reasonable royalty for several reasons.

01:39:03   22         Number one, the DEV does not include sales made

01:39:06   23  from phones -- or does include sales made from phones,

01:39:11   24  computers, tablets, Fire Sticks, none of which used the

01:39:14   25  accused infringing device, or importantly, the claimed

01:39:17  1    invention.  And he admitted that from the stand,

01:39:20  2    Your Honor.

01:39:20  3          He actually also ignored the actual sales of the

01:39:24  4    products made from using the claimed invention or using the

01:39:29  5    Echo device.

01:39:30  6          So he's using a basis that includes sales from

01:39:35  7    products that do not include the claimed invention but

01:39:38  8    ignoring the numbers where they do include -- include the

01:39:42  9    claimed invention.  That's the main reason we're objecting

01:39:45  10   on DEV, Your Honor.

01:39:46  11         But it also is because the DEV does not include

01:39:47  12   the actual costs of the units sold or any of the other

01:39:51  13   expenses or costs with respect to the DEV.

01:39:53  14         THE COURT:  What's your position on apportionment?

01:39:57  15         MS. DOAN:  With respect to apportionment,

01:39:58  16   Your Honor, there's two arguments.  One is the 50 percent

01:40:01  17   apportionment that Mr. McAlexander apportioned between the

01:40:04  18   device with respect to the accused features and the

01:40:07  19   non-accused features.

01:40:08  20         Mr. Ratliff testified specifically that he's

01:40:10  21   relying completely on Mr. McAlexander's analysis --

01:40:13  22         THE COURT:  Slow down, Ms. Doan.

01:40:17  23         MS. DOAN:  -- analysis for that.  But then he also

01:40:19  24   said, Your Honor, that the -- with respect to the 50

01:40:21  25   percent apportionment, that it has not made an allocation

01:40:27  1  for the speakers, the video screens, et cetera.

01:40:30  2       And he went through the various different features

01:40:32  3  of the Echo devices, such as the Echo Show, and said that

01:40:35  4  this would have -- that's why he said he discounted it --

01:40:39  5  less than 50 percent.

01:40:40  6       But there's no basis necessarily that he gave as

01:40:43  7  to why it should be less than -- why it should be the 50

01:40:45  8  percent range as recommended by Mr. McAlexander.

01:40:47  9       THE COURT:  All right.

01:40:49  10       MS. DOAN:  You look puzzled.  Do you have a

01:40:52  11  question about that?

01:40:53  12       THE COURT:  No.

01:40:54  13       MS. DOAN:  Okay.  The second was with respect to

01:40:57  14  the apportionment of the 6 to 7 percent for the discounting

01:41:00  15  of the marketing expenses.

01:41:01  16       Number one, the 6 to 7 percent was based upon

01:41:04  17  marketing expenses of all of Amazon.  That's what he used.

01:41:06  18  It has nothing to do with the Echo channel or sales, and he

01:41:10  19  admitted that from the stand.  It's not a proper

01:41:13  20  apportionment.  But he used that because he thought that

01:41:16  21  was a number that was used by -- by Amazon for all of

01:41:17  22  marketing.

01:41:18  23       More importantly, that 6 to 7 percent just

01:41:21  24  doesn't -- it's a number, but it doesn't in any way relate

01:41:25  25  to the marketing of the Echo or the sales of the Echo

01:41:27  1   channel.

01:41:27  2          I'm assuming the -- the third -- there's three

01:41:31  3   more issues with respect to damages, Your Honor.

01:41:33  4          THE COURT:  I want to hear all of your --

01:41:33  5          MS. DOAN:  You got it.

01:41:34  6          THE COURT:  -- argument on damages.

01:41:36  7          MS. DOAN:  The third one is with respect to no

01:41:39  8   damages for direct infringement.  I'm assuming I don't need

01:41:43  9   to argue that.

01:41:44  10         THE COURT:  I would think not.

01:41:46  11         MS. DOAN:  Good.

01:41:46  12         The fourth is with respect to the $700,000.00

01:41:49  13  offer rendering -- not failing to take into account the

01:41:52  14  $700,000.00 offer to sale -- the patent itself fails to

01:41:58  15  take into account -- fails to take into account with

01:42:01  16  respect to the 25 to $31 million number that he came up

01:42:04  17  with.

01:42:05  18         This is important, Your Honor, because the

01:42:06  19  $700,000.00 offer to sell the patent to Google might have

01:42:10  20  been missed by Dr. Li, but it's definitely not missed by --

01:42:14  21  by Mr. Ratliff.  He understands what a sale is.  And he

01:42:16  22  just completely ignored those numbers altogether.

01:42:20  23         So the caselaw supporting that unbalance is just

01:42:22  24  too great to not take into account in some fashion that

01:42:26  25  number.

01:42:26   1          And, finally, Your Honor, there's no evidence to

01:42:29   2   support a running royalty in this case.

01:42:30   3          THE COURT:  All right.

01:42:31   4          MS. DOAN:  Thank you.

01:42:31   5          THE COURT:  Let -- let me hear a response from the

01:42:33   6   Plaintiff, please.

01:42:34   7          MR. LAMBRIANAKOS:  Thank you, Your Honor.

01:42:40   8          As the Court understands, there's a disagreement

01:42:43   9   between the experts regarding the reliability of the

01:42:47  10   evidence and the apportionments that were done.

01:42:50  11          Mr. Ratliff presented sufficient evidence that the

01:42:52  12   DEV number is a number relied on by Amazon to understand

01:42:54  13   the profitability of its products and to make decisions in

01:42:57  14   its business.  And on that basis, there's a sufficient

01:43:00  15   reason to use that as a royalty base.

01:43:03  16          Mr. Ratliff relied on Mr. McAlexander's testimony

01:43:06  17   that the patented aspects of the accused products were at

01:43:11  18   least as important as those which are not patented, and he

01:43:14  19   provided a technical apportionment based on that

01:43:16  20   information.

01:43:17  21          And then he continued to apportion down to the

01:43:19  22   marketing expenses which are saved by Amazon by not having

01:43:23  23   to market products through the Echo channel.

01:43:26  24          Once the Echo product has been marketed, the

01:43:29  25   remaining sales that take place are done free of

| | | |
|---|---|---|
| 01:43:31 | 1 | expenditure, and that's where the 6.7 percent comes from. |
| 01:43:35 | 2 | To the extent they disagree, they -- they had a |
| 01:43:39 | 3 | Daubert motion on this issue, and it was denied.  It's up |
| 01:43:41 | 4 | to the jury to decide. |
| 01:43:43 | 5 | Now, with respect to the -- the issue of the |
| 01:43:51 | 6 | Google offer, as we know -- that we just heard, the '756 |
| 01:43:53 | 7 | patent was invalid from the day it was issued, according to |
| 01:43:55 | 8 | the -- to the Defendants.  And, therefore, an offer to sell |
| 01:44:00 | 9 | it is irrelevant. |
| 01:44:01 | 10 | Mr. Ratliff never considered it in his report |
| 01:44:04 | 11 | initially because it was so irrelevant to the reasonable |
| 01:44:07 | 12 | royalty calculation, lack of any infringement, any belief |
| 01:44:10 | 13 | of infringement or invalidity or use of the product, and so |
| 01:44:14 | 14 | the -- and all of that was admitted today by their expert. |
| 01:44:18 | 15 | And so those issues are issues for the jury to |
| 01:44:21 | 16 | resolve and certainly not an issue of law which precludes |
| 01:44:25 | 17 | Mr. -- Mr. Ratliff's opinions from being considered by the |
| 01:44:28 | 18 | jury. |
| 01:44:29 | 19 | So for those -- those reasons, Your Honor, we |
| 01:44:31 | 20 | believe this motion should be denied. |
| 01:44:34 | 21 | THE COURT:  All right.  Well, with regard to the |
| 01:44:37 | 22 | Defendants' motion for judgment as a matter of law under |
| 01:44:40 | 23 | Rule 50(a), that as a matter of law Plaintiff has failed to |
| 01:44:45 | 24 | properly put forward any evidence that would support an |
| 01:44:49 | 25 | issue for damages to be submitted to the jury, the Court |

01:44:53  1    denies that motion.

01:44:54  2         Those appear, counsel, to be all the motions under

01:44:58  3    Rule 50(a).

01:44:59  4         We're going to take a short recess, and then I'm

01:45:09  5    going to undertake an informal charge conference with

01:45:13  6    regard to the latest version of the proposed charge and

01:45:17  7    verdict form which you've submitted.

01:45:19  8         Before I do that, ordinarily, I would ask you to

01:45:24  9    read into the record the exhibits used during today's

01:45:27  10   portion of the trial tomorrow morning before I bring in the

01:45:30  11   jury, but if you're prepared to do that now, I'm happy to

01:45:33  12   do that now.

01:45:33  13        Mr. Akin stepped forward a minute ago tending to

01:45:38  14   indicate that.

01:45:38  15        Is Plaintiff equally prepared to do that now?

01:45:42  16        MS. TRUELOVE:  We are, Your Honor.  We don't have

01:45:44  17   anything to move into the record.

01:45:45  18        THE COURT:  All right.  What's Defendant have with

01:45:47  19   regard to items used today during the -- or from the list

01:45:52  20   of pre-admitted exhibits?

01:45:53  21        MR. AKIN:  Amazon used one additional exhibit

01:45:55  22   today, and it's DTX-41 they'd like to move into evidence.

01:46:00  23        THE COURT:  Plaintiff have any objection to that?

01:46:02  24        MS. TRUELOVE:  We do not, Your Honor.

01:46:04  25        THE COURT:  Okay.

```
01:46:05   1         MR. AKIN:  And then I also have one point of
01:46:06   2    clarification from this morning.  Mr. Hadden in his
01:46:09   3    cross-examination of Mr. McAlexander used DTX-33.  That was
01:46:14   4    a duplicate of DTX-14, which is the Li article.
01:46:18   5         And I just wanted to make that clear for the
01:46:20   6    record that DT -- DTX-33 was not pre-admitted, but it will
01:46:24   7    be used in the inequitable conduct case because it was --
01:46:27   8    it was a copy of the Li article attached to an email that
01:46:30   9    will become relevant for inequitable conduct.  But it is
01:46:34  10    the same as DTX-14, which is the Li article.
01:46:36  11         THE COURT:  All right.  Well, those documents will
01:46:38  12    speak for themselves.
01:46:38  13         Counsel -- yes, Ms. Doan?
01:46:44  14         MS. DOAN:  Your Honor, I have one further thing
01:46:46  15    before the break.  It's -- the counsel that's preparing for
01:46:48  16    closing argument, Your Honor, wanted me to address with
01:46:53  17    respect to your Motion in Limine -- our Motion in Limine
01:46:55  18    No. 9 with respect to mentioning other parties that did not
01:46:58  19    come or witnesses that did not come from either party.
01:47:01  20         I know the Court had ruled previously in chambers
01:47:04  21    that they could mention that morning that Dr. Chhetri was
01:47:08  22    not there when the notebook of Dr. Chhetri came in.
01:47:12  23         And we wanted a clarification that the MIL would
01:47:14  24    be in place during closing arguments for all witnesses on
01:47:16  25    both sides so that the case doesn't turn upon --
```

1270

01:47:20  1        THE COURT:  Well, this is also the issue that

01:47:22  2  Mr. Dacus raised more than an hour after it supposedly

01:47:28  3  occurred and after everybody had time over the lunch break

01:47:30  4  to think about it and come up with it.

01:47:33  5        And I overruled it as untimely.  And I said at

01:47:37  6  that time that doesn't obviate the order in limine as it

01:47:40  7  stands.

01:47:40  8        Quite honestly, rather than me talk to you and you

01:47:45  9  talk to them, counsel that are going to present closing

01:47:47 10  arguments need to let me know what they would propose to

01:47:51 11  say, and I'll give them guidance as to whether I view it as

01:47:55 12  within or outside the parameters of the MIL order.

01:47:58 13        MS. DOAN:  Yes, Your Honor, we'll let them know.

01:48:00 14        THE COURT:  So I'll be happy to meet with them in

01:48:03 15  the morning if they have any questions about that before we

01:48:05 16  take this up with the jury.

01:48:07 17        MS. DOAN:  Thank you, Your Honor.

01:48:08 18        THE COURT:  All right.  Anything else from either

01:48:09 19  side?

01:48:10 20        Counsel, I'm going to do something a little

01:48:12 21  different.  I have traditionally held the informal charge

01:48:16 22  conference in my office.  How many of you intend to be

01:48:20 23  present and participate in the informal charge conference?

01:48:24 24  Just raise your hands and let me get a visual.

01:48:27 25        That's too many bodies in my office under the

```
01:48:30   1   current spacing necessities.  Therefore, what I'm going to
01:48:35   2   do is, after the recess, I will come back in the courtroom.
01:48:39   3   We will be off the record.  There will be nobody in here
01:48:42   4   but the lawyers and the Court staff participating in the
01:48:46   5   informal charge conference.  And we will have plenty of
01:48:49   6   room to spread out, and I will hear from everybody fully
01:48:53   7   and informally.  But we'll do it in here where we're not
01:48:57   8   cramped or too close together.  All right?
01:49:00   9           Let's take about a 10-minute recess, and then I'll
01:49:05  10   be back.
01:49:06  11           The Court stands in recess.
01:49:08  12           COURT SECURITY OFFICER:  All rise.
01:49:09  13           (Recess.)
04:21:41  14           (Jury out.)
04:21:43  15           COURT SECURITY OFFICER:  All rise.
04:21:46  16           THE COURT:  Be seated, please.
04:22:53  17           All right.  Counsel, after the Court heard,
04:23:02  18   considered, and ruled on your motions under Rule 50(a) of
04:23:05  19   the Federal Rules of Civil Procedure, the Court conducted
04:23:09  20   an informal charge conference off the record with counsel
04:23:14  21   for both sides present, in which there was an informal and
04:23:21  22   fulsome review of the final jury instructions and verdict
04:23:25  23   form as recently updated and submitted by the parties at
04:23:31  24   the Court's direction.
04:23:32  25           The Court had the benefit of considerable input
```

1272

04:23:34  1  and discussion with counsel for both the parties.  The

04:23:39  2  Court has taken that input into account and has generated

04:23:43  3  what it believes to be the appropriate final jury

04:23:45  4  instruction and verdict form and has given a copy of the

04:23:50  5  same to both sides with an opportunity to review and

04:23:53  6  consider it, and will now proceed to conduct a formal

04:23:58  7  charge conference on the record where we can take up any

04:24:04  8  objections that either party wishes to make regarding

04:24:07  9  either the final jury instructions or the verdict form.

04:24:11  10       My typical practice in this regard, counsel, is to

04:24:14  11  ask whoever the spokesperson will be for Plaintiff and

04:24:20  12  Defendant to both go to the podium, and we'll review these

04:24:25  13  documents, beginning with the final jury instructions, and

04:24:28  14  then moving to the verdict form on a page-by-page basis.

04:24:32  15       And if at any -- if at any place in that process

04:24:36  16  we come to a location where you believe something was

04:24:40  17  included that should not have been, something was omitted

04:24:44  18  that should have been included, or there's any other

04:24:50  19  inaccuracy or error that you want to raise by way of a

04:24:52  20  formal objection on the record, then I'll hear those as we

04:24:54  21  go through the documents page-by-page.

04:24:56  22       But doing it that way, the Court can be satisfied

04:25:00  23  that we've not overlooked anything or precluded either

04:25:05  24  party from making a full and complete record in this

04:25:07  25  regard.

04:25:07  1          So whoever is going to address the Court for

04:25:14  2     the -- for the formal charge conference on behalf of

04:25:17  3     Plaintiff and Defendant, if you'll both go to the podium.

04:25:19  4          Certainly, you don't need to stand right next to

04:25:21  5     each other, and you can move back and forth, but it will

04:25:24  6     save us a lot of time from you walking across the courtroom

04:25:28  7     back and forth from the counsel tables, okay?

04:25:31  8          And soon as you're there, we'll take up the final

04:25:35  9     jury instructions, beginning with the first page.

04:25:37 10          Turning to the final jury instructions, is there

04:25:40 11     objection on the first page from either Plaintiff or

04:25:42 12     Defendant?

04:25:43 13          MS. PARK:  No objection, Your Honor.

04:25:44 14          MS. LOEBBAKA:  No objection for Defendant,

04:25:47 15     Your Honor.

04:25:47 16          THE COURT:  All right.  Turning then to Page 2, is

04:25:49 17     there objection here from either party?

04:25:52 18          MS. PARK:  No objection, Your Honor.

04:25:53 19          MS. LOEBBAKA:  No objection, Your Honor.

04:25:54 20          THE COURT:  Turning to Page 3, is there any

04:25:58 21     objection here from either party?

04:26:00 22          MS. PARK:  No objection, Your Honor.

04:26:01 23          MS. LOEBBAKA:  No objection, Your Honor.

04:26:03 24          THE COURT:  Turning next to Page 4 of the final

04:26:08 25     jury instructions, is there objection here from either

04:26:10  1  Plaintiff or Defendant?

04:26:11  2        MS. PARK:  No objection, Your Honor.

04:26:12  3        MS. LOEBBAKA:  No objection, Your Honor.

04:26:13  4        THE COURT:  Turning next to Page 5, is there

04:26:18  5  objection here from either party?

04:26:19  6        MS. PARK:  No objection, Your Honor.

04:26:20  7        MS. LOEBBAKA:  No objection, Your Honor.

04:26:22  8        THE COURT:  Turning then to Page 6, is there

04:26:27  9  fine -- is there objection here from either party?

04:26:30  10        MS. PARK:  No objection, Your Honor.

04:26:31  11        MS. LOEBBAKA:  No objection, Your Honor.

04:26:33  12        THE COURT:  Turning next to Page 7, is there

04:26:35  13  objection here?

04:26:37  14        MS. PARK:  No objection, Your Honor.

04:26:39  15        MS. LOEBBAKA:  No objection, Your Honor.

04:26:40  16        THE COURT:  Next turning to Page 8, is there any

04:26:43  17  objection here?

04:26:45  18        MS. PARK:  No objection, Your Honor.

04:26:46  19        MS. LOEBBAKA:  No objection, Your Honor.

04:26:47  20        THE COURT:  Turning next to Page 9 of the final

04:26:50  21  jury instructions, is there objection here from either

04:26:52  22  party?

04:26:53  23        MS. PARK:  No objection, Your Honor.

04:26:54  24        MS. LOEBBAKA:  No objection, Your Honor.

04:26:56  25        THE COURT:  Turning next then to Page 10, is there

| | | |
|--|--|--|
| 04:26:59 | 1 | objection from either party? |
| 04:27:01 | 2 | MS. PARK:  No objection, Your Honor. |
| 04:27:02 | 3 | MS. LOEBBAKA:  No objection, Your Honor. |
| 04:27:03 | 4 | THE COURT:  Turning next to Page 11, is there |
| 04:27:06 | 5 | objection here from either party? |
| 04:27:07 | 6 | MS. PARK:  No objection, Your Honor. |
| 04:27:08 | 7 | MS. LOEBBAKA:  No objection, Your Honor. |
| 04:27:09 | 8 | THE COURT:  Turning then to Page 12, is there |
| 04:27:13 | 9 | objection here from either party? |
| 04:27:16 | 10 | MS. PARK:  No objection, Your Honor. |
| 04:27:17 | 11 | MS. LOEBBAKA:  No objection, Your Honor. |
| 04:27:18 | 12 | THE COURT:  Turning to Page 13, is there any |
| 04:27:21 | 13 | objection? |
| 04:27:21 | 14 | MS. PARK:  No objection, Your Honor. |
| 04:27:23 | 15 | MS. LOEBBAKA:  Yes, Your Honor. |
| 04:27:26 | 16 | Turning to the paragraph starting "you must |
| 04:27:29 | 17 | determine separately for each asserted claim," near the |
| 04:27:34 | 18 | bottom, this section is talking about direct infringement |
| 04:27:36 | 19 | by Amazon's customers. |
| 04:27:38 | 20 | And that sentence states:  You must determine |
| 04:27:40 | 21 | separately for each asserted claim whether Amazon has |
| 04:27:43 | 22 | infringed the '049 patent. |
| 04:27:44 | 23 | And so, to clarify that, we'd ask that it says: |
| 04:27:47 | 24 | Whether Amazon's customers has directly infringed the '049 |
| 04:27:57 | 25 | patent. |

1276

| | | |
|---|---|---|
| 04:27:57 | 1 | THE COURT:  All right.  That objection is |
| 04:27:58 | 2 | overruled. |
| 04:27:59 | 3 | Anything further on Page 13? |
| 04:28:03 | 4 | MS. LOEBBAKA:  No, Your Honor. |
| 04:28:04 | 5 | THE COURT:  Turning then to Page 14, is there any |
| 04:28:07 | 6 | objection here from either Plaintiff or Defendant? |
| 04:28:09 | 7 | MS. PARK:  No objection, Your Honor. |
| 04:28:10 | 8 | MS. LOEBBAKA:  Yes, Your Honor. |
| 04:28:13 | 9 | About halfway through the Page No. 1 where it |
| 04:28:16 | 10 | states "acts are actually carried out by Amazon's customers |
| 04:28:20 | 11 | making, using, or selling the accused products," the |
| 04:28:24 | 12 | accusation here is Amazon's customers using the accused |
| 04:28:27 | 13 | products. |
| 04:28:29 | 14 | THE COURT:  And you object to the additional |
| 04:28:32 | 15 | language of -- of making or selling, even though they're |
| 04:28:36 | 16 | all in the disjunctive? |
| 04:28:39 | 17 | MS. LOEBBAKA:  Yes.  Yes, Your Honor. |
| 04:28:39 | 18 | THE COURT:  Okay.  That objection is overruled. |
| 04:28:41 | 19 | Anything further on Page 14? |
| 04:28:43 | 20 | MS. LOEBBAKA:  No, Your Honor. |
| 04:28:44 | 21 | THE COURT:  Turning then to Page 15 of the final |
| 04:28:46 | 22 | jury instructions, is there objection here from either |
| 04:28:48 | 23 | party? |
| 04:28:50 | 24 | MS. PARK:  No objection, Your Honor. |
| 04:28:51 | 25 | MS. LOEBBAKA:  No objection, Your Honor. |

```
04:28:52   1              THE COURT:  Next turning to Page 16, is there
04:28:54   2    objection here?
04:28:55   3              MS. PARK:  No objection, Your Honor.
04:28:57   4              MS. LOEBBAKA:  No objection, Your Honor.
04:28:58   5              THE COURT:  Turning next to Page 17, is there
04:29:02   6    objection here?
04:29:02   7              MS. PARK:  No objection, Your Honor.
04:29:04   8              MS. LOEBBAKA:  No objection, Your Honor.
04:29:06   9              THE COURT:  Turning then to Page 18, is there any
04:29:10  10    objection here from either party?
04:29:11  11              MS. PARK:  No objection, Your Honor.
04:29:12  12              MS. LOEBBAKA:  No objection, Your Honor.
04:29:14  13              THE COURT:  Turning next to Page 19, is there
04:29:19  14    objection here from either party?
04:29:21  15              MS. PARK:  No objection, Your Honor.
04:29:22  16              MS. LOEBBAKA:  No objection, Your Honor.
04:29:24  17              THE COURT:  Turning then to Page 20, is there
04:29:26  18    objection here from either party?
04:29:29  19              MS. PARK:  No objection, Your Honor.
04:29:30  20              MS. LOEBBAKA:  No objection, Your Honor.
04:29:31  21              THE COURT:  Turning then to Page 21, is there
04:29:35  22    objection here from either party?
04:29:39  23              MS. PARK:  No objection, Your Honor.
04:29:40  24              MS. LOEBBAKA:  No objection, Your Honor.
04:29:42  25              THE COURT:  Turning then to Page 22, is there
```

```
04:29:44   1   objection here from either party?

04:29:46   2        MS. PARK:  No objection, Your Honor.

04:29:47   3        MS. LOEBBAKA:  No objection, Your Honor.

04:29:48   4        THE COURT:  Turning to Page 23, Page 23 contains

04:29:52   5   the remaining Georgia-Pacific factors.  And on Pages 22 and

04:29:59   6   23, all 15 of the Georgia-Pacific factors are set forth.

04:30:02   7        Is there any objection to anything on Page 23, and

04:30:06   8   do both parties agree that the Court should properly charge

04:30:09   9   the jury on all 15 of the Georgia-Pacific factors?

04:30:12  10        MS. PARK:  Yes, Your Honor.  And no objection.

04:30:15  11        MS. LOEBBAKA:  Yes, Your Honor.  No objection.

04:30:17  12        THE COURT:  All right.  Turning then to Page 24,

04:30:20  13   is there objection here from either party?

04:30:22  14        MS. PARK:  No objection, Your Honor.

04:30:23  15        MS. LOEBBAKA:  No objection, Your Honor.

04:30:25  16        THE COURT:  Turning next to Page 25, is there

04:30:28  17   objection here from either party?

04:30:30  18        MS. PARK:  No objection, Your Honor.

04:30:31  19        MS. LOEBBAKA:  No objection, Your Honor.

04:30:32  20        THE COURT:  Page 26 is the next page.  This

04:30:37  21   indicates where closing arguments will be presented.  I

04:30:40  22   assume there's no objection here.  But I'll ask, for the

04:30:43  23   record, any objection from either party?

04:30:44  24        MS. PARK:  No objection, Your Honor.

04:30:46  25        MS. LOEBBAKA:  No objection, Your Honor.
```

| | | |
|---|---|---|
| 04:30:47 | 1 | THE COURT:  Turning then to Page 27, is there |
| 04:30:49 | 2 | objection here from either party? |
| 04:30:51 | 3 | MS. PARK:  No objection, Your Honor. |
| 04:30:52 | 4 | MS. LOEBBAKA:  No objection, Your Honor. |
| 04:30:54 | 5 | THE COURT:  And then turning to Page 28, which is |
| 04:30:58 | 6 | the last page of the Court's final jury instructions, is |
| 04:31:01 | 7 | there objection here from either party? |
| 04:31:02 | 8 | MS. PARK:  No objection, Your Honor. |
| 04:31:03 | 9 | MS. LOEBBAKA:  No objection, Your Honor. |
| 04:31:05 | 10 | THE COURT:  All right.  Then, counsel, we'll next |
| 04:31:17 | 11 | turn to the verdict form, and we'll follow the same process |
| 04:31:20 | 12 | in reviewing this and hearing from the parties as to any |
| 04:31:22 | 13 | objections. |
| 04:31:23 | 14 | Beginning with the verdict form, the cover page, |
| 04:31:26 | 15 | which would be Page 1, is there objection here from either |
| 04:31:30 | 16 | party? |
| 04:31:30 | 17 | MS. PARK:  No objection, Your Honor. |
| 04:31:32 | 18 | MR. RE:  No objection from Amazon. |
| 04:31:34 | 19 | THE COURT:  Turning then to Page 2 of the verdict |
| 04:31:37 | 20 | form, is there objection here from either party? |
| 04:31:40 | 21 | MS. PARK:  No objection, Your Honor. |
| 04:31:42 | 22 | MR. RE:  No objection, Your Honor. |
| 04:31:43 | 23 | THE COURT:  Turning then to Page 3 of the verdict |
| 04:31:46 | 24 | form, is there objection here from either party? |
| 04:31:48 | 25 | MS. PARK:  No objection, but there is a minor |

04:31:52  1    typo.  It is very "imporant" is missing a t.

04:31:58  2         THE COURT:  Thank you.  I will correct the

04:32:00  3    spelling on the fourth word of the top instruction.

04:32:04  4         Anything else on Page 3 from either party?

04:32:05  5         MS. PARK:  No, Your Honor.

04:32:08  6         THE COURT:  Anything from Amazon here, Mr. Re?

04:32:11  7         MR. RE:  Nothing from Amazon.

04:32:13  8         THE COURT:  Turning then to Page 4 where

04:32:16  9    Question 1 of the verdict form -- or Question 1 of the

04:32:17  10   verdict form is found, is there objection here from either

04:32:19  11   party?

04:32:20  12        MS. PARK:  No objection, Your Honor.

04:32:21  13        MR. RE:  Your Honor, I propose that the word "any"

04:32:24  14   not be in caps and bold.

04:32:27  15        THE COURT:  All right.  That objection is

04:32:28  16   overruled.

04:32:29  17        Question 1 is all that's found on Page 4 of the

04:32:34  18   verdict form.

04:32:35  19        So we will turn to Page 5 of the verdict form

04:32:37  20   wherein Question 2 is located.  Is there objection here

04:32:40  21   from either party?

04:32:42  22        MS. PARK:  No objection, Your Honor.

04:32:44  23        MR. RE:  Your Honor, in light of the fact that the

04:32:46  24   two claims are listed in Question No. 2, Amazon proposes

04:32:50  25   that the words "any of" be deleted from Line 1.

04:33:02  1            THE COURT:  That objection is overruled.

04:33:04  2            Question 2 is all that is located on Page 5.

04:33:08  3            So, with that, we'll turn to Page 6 of the verdict

04:33:11  4  form where Question 3 is located with instructions above

04:33:14  5  it.

04:33:14  6            Are there objections to anything on Page 6 of the

04:33:16  7  verdict form?

04:33:17  8            MS. PARK:  No objection, Your Honor.

04:33:19  9            MR. RE:  Given your ruling on -- on Question

04:33:23 10  No. 1, no objection on 3 in light of that ruling.

04:33:27 11            THE COURT:  All right.  Then we'll turn to Page 7

04:33:29 12  of the verdict form where Question 4A is located, together

04:33:32 13  with some instructions.

04:33:34 14            Are there any objections here, counsel for either

04:33:37 15  party?

04:33:37 16            MS. PARK:  No objection, Your Honor.

04:33:38 17            MR. RE:  No objection.

04:33:39 18            THE COURT:  Turning then to Page 8 where

04:33:42 19  Question 4B of the verdict form is located.  Is there

04:33:45 20  objection to anything on this page, counsel?

04:33:47 21            MS. PARK:  No objection, Your Honor.

04:33:48 22            MR. RE:  No objection, Your Honor.

04:33:49 23            THE COURT:  Turning then to Page 9, which is the

04:33:54 24  final page of the verdict form.  Is there objection here

04:33:56 25  from either party?

04:33:57   1         MS. PARK:  No objection, Your Honor.

04:34:00   2         MR. RE:  No objection to that, Your Honor.

04:34:02   3         THE COURT:  Thank you, counsel.

04:34:02   4         That completes the formal charge conference.

04:34:05   5         At this point, it appears that everything is in

04:34:09   6   place so that we can begin with the Court's final jury

04:34:12   7   instructions, followed by counsel's closing arguments first

04:34:15   8   thing in the morning.

04:34:17   9         Are either Plaintiff or Defendant aware of

04:34:19  10   anything else the Court should take up before we recess for

04:34:21  11   the day?

04:34:22  12         MS. DOAN:  Yes, Your Honor.

04:34:24  13         We received an email after the court this

04:34:29  14   morning -- or this afternoon that the Plaintiff wants to

04:34:31  15   call Mr. McAlexander in the inequitable conduct hearing.

04:34:34  16         As this Court will recall, when you were

04:34:37  17   entertaining argument at pre-trial as to whether Nick

04:34:40  18   Godici would be able to testify in front of the jury, you

04:34:43  19   specifically asked Mr. Fabricant if he intended to call

04:34:46  20   Mr. McAlexander in the inequitable conduct hearing, and he

04:34:47  21   said he did not.

04:34:48  22         And now they have -- they didn't designate him

04:34:53  23   last night when our timely designations were due, and they

04:34:56  24   have notified us this afternoon that they intend to call

04:34:59  25   him.

1283

04:34:59  1        And we didn't allocate for that in our time, and

04:35:03  2  Mr. Fabricant and I did not discuss that when we met and

04:35:06  3  conferred yesterday afternoon -- afternoon, Your Honor.

04:35:07  4        THE COURT:  What does Plaintiff have to say with

04:35:09  5  regard to this?

04:35:14  6        MR. LAMBRIANAKOS:  Your Honor, at the time of the

04:35:20  7  discussion on Mr. McAlexander during the pre-trial

04:35:23  8  conference, there was a motion before the Court on the

04:35:26  9  inclusion of Mr. Godici as an expert.  And the Court asked

04:35:30 10  Mr. Fabricant at that time if we intended to call

04:35:33 11  Mr. McAlexander.

04:35:34 12        And in the context of patent law experts and --

04:35:37 13  and the procedural-type issues, Mr. Fabricant believed that

04:35:41 14  Mr. McAlexander had no testimony to offer on that.  He

04:35:45 15  wasn't thinking about the fact that there is some opinion

04:35:47 16  in his expert report concerning the materiality of the

04:35:50 17  references.

04:35:50 18        And while we think it's unlikely that we would

04:35:53 19  want to call Mr. McAlexander, we wanted to -- to keep the

04:35:55 20  option to call him just with respect to the materiality of

04:35:58 21  the references.  He wouldn't be testifying on any matter

04:36:01 22  that would have been relevant to Mr. Godici's testimony.

04:36:08 23        THE COURT:  All right.  I gather Mr. Fabricant

04:36:09 24  will take the lead for Plaintiff with regard to the bench

04:36:12 25  trial related to inequitable conduct.

04:36:14   1          Ms. Doan, will that be you or someone else on the

04:36:20   2   Defendants' side?

04:36:21   3          MS. DOAN:  That is me.  I believe that Mr. Re may

04:36:24   4   take a witness, as well, Your Honor.

04:36:26   5          THE COURT:  All right.  I'm going to direct then

04:36:27   6   that you or anyone else on Defendants' side meet and confer

04:36:31   7   with Mr. Fabricant overnight about it.  I don't intend for

04:36:36   8   these issues to get in the way of charging a jury and

04:36:39   9   getting a verdict back.

04:36:40   10         As soon as the jury has retired to deliberate, in

04:36:42   11  advance of actually beginning the bench trial, I'll revisit

04:36:45   12  this issue with counsel.

04:36:46   13         MS. DOAN:  Thank you, Your Honor.

04:36:47   14         THE COURT:  All right.  Anything further that we

04:36:48   15  should take up before we recess for the day?

04:36:53   16         Mr. Lambrianakos, is the Plaintiff aware of

04:36:55   17  anything further?

04:36:56   18         MR. LAMBRIANAKOS:  No, Your Honor.

04:36:57   19         THE COURT:  Ms. Doan?

04:36:59   20         MS. DOAN:  No, Your Honor.

04:37:00   21         THE COURT:  We stand in recess until tomorrow

04:37:02   22  morning.

04:37:02   23         COURT SECURITY OFFICER:  All rise.

04:37:03   24         (Recess.)

           25

1

CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4   correct transcript from the stenographic notes of the

5   proceedings in the above-entitled matter to the best of my

6   ability.

7

8

9    /S/ Shelly Holmes _____          10/7/2020
    SHELLY HOLMES, CSR, TCRR                 Date
10  OFFICIAL REPORTER
    State of Texas No.: 7804
11  Expiration Date: 12/31/2020

12

13

14

15

16

17

18

19

20

21

22

23

24

25